IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,     )
                                       )
           Plaintiff,         )
                                         )
v.                                   )         No. 3:10-CR-161
                                         )
MAIMOUNE WRIGHT,            )         (VARLAN/SHIRLEY)
                                       )
           Defendant.      )

## MEMORANDUM AND ORDER

         All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Wright's Motion for Production of Favorable Evidence [Doc. 75], Defendant Wright's Motion for Rule 16 Discovery [Doc. 76], and her Objection to Release of Protective Order and Motion to Preserve Patient Records and Provide Defendant Wright Access Thereto [Doc. 114]. The parties appeared before the Court for a hearing on the first two of these motions on September 26, 2011. Assistant United States Attorney Alexandra Hui appeared on behalf of the Government. Attorney Michael H. Meares represented Defendant Wright, who was also present.[1] The parties presented testimony and argument on the pending motions. The Court took the motions under advisement at the conclusion of the hearing. Further procedural developments, particularly with regard to the Defendant's

---

[1]Attorneys Michael B. Menefee and Christopher Scott Irwin appeared on behalf of Defendants Tamral Guzman and Brian Downey respectively. Defendants Guzman and Downey were not present at the hearing and have not joined in these motions.

Objection and the medical records of Maryville Pain Management, will be described in the Analysis below.

# I. ANALYSIS

The Defendant asks the Court to order the Government to provide certain enumerated items in discovery pursuant to Rule 16, Federal Rules of Criminal Procedure, and to produce favorable or exculpatory evidence, including certain listed items. At the outset, the Court observes that it has already ordered the Government to provide both Rule 16 discovery and exculpatory evidence to Defendant Wright in its Order on Discovery and Scheduling [Doc. 45], filed on April 8, 2011.[2] Thus, the Court examines the Defendant's requests to the extent that they ask the Government to disclose information beyond that provided for by the Court's Order or the parties dispute whether the information should be disclosed.

## A. Rule 16 Discovery

Defendant Wright moves the Court to order the Government to provide the following items pursuant to Rule 16 of the Federal Rules of Criminal Procedure:

(1) Any oral, recorded, or written statements by Defendant Wright;

(2) Defendant Wright's prior criminal record;

(3) Office supplies bearing Defendant Wright's name or DEA number, including blank prescription pads;

(4) Handwriting exemplars of Defendant Wright and/or documents

---

[2]The Court notes that it filed an initial Order on Discovery and Scheduling [Doc. 14] on December 14, 2010, before Defendant Wright was charged in this case.

purporting to contain practice attempts at her signature;

(5) Any statistical or summary documents quantifying the type and number of drugs prescribed by the Defendant or summarizing her patient care or prescribing history; and

(6) Any other documents or objects that the Government intends to use in its case in chief at trial, that are material to the preparation of the Defendant's defense, or that belong to the Defendant.

The Government responds [Doc. 86] that it has complied with Rule 16 and the Order of this Court in providing discovery to the Defendant. It states that all Giglio (impeaching information) and Jencks material (witness statements) will be provided at least one week before trial. The Court will briefly examine each of the Defendant's requests.

*(1) Defendant's Statements*

The Defendant requests that the Government disclose all oral, recorded, and written statements that she gave that are not already the subject of her Motion to Suppress Defendant Wright's Statement Regarding Pre-signed Prescriptions [Doc. 64]. With regard to any oral statements by the Defendant, the Government states, in a Motion for Leave to File Addenda Under Seal [Doc. 124] relating to Bruton issues, that it has reports of Investigators David Graham and Betty Houser that recount their interviews of Defendant Wright. The Government asserts that these reports contain the statements of the investigators and do not constitute statements by the Defendant for Bruton purposes. With respect to discovery, however, the Court finds that the reports contain "the substance of a[] relevant oral statement made by the defendant, before . . . arrest, in response to interrogation by a person the defendant knew was a government agent[.]" Fed. R. Crim. P. 16(a)(1)(A). Accordingly, the Court finds that the entirety of the "Details" section of Investigator

Graham's report dated November 5, 2009, [Sealed Doc. 127] and paragraph 11 of Investigator Houser's report [Sealed Doc. 128] should be disclosed to Defendant Wright, if they have not already been disclosed. Although the reports of government agents are generally exempt from discovery, Rule 16(a)(1) requires disclosure of those portions of agent's reports that memorialize the oral statement of a defendant in response to interrogation. Fed. R. Crim. P. 16(2) (exempting agent's reports from discovery except to the extent that "Rule 16(a)(1) provides otherwise"); see United States v. Lewis, 35 F.3d 148, 150 (6th Cir. 1994) (approving, per Rule 16(a)(1)(A), the government's provision of a portion of an agent's report containing the summary of the agent's interview of the defendant).[3]

With regard to the Defendant's recorded and written statements, at the September 26 motion hearing, the Government stated that it had no recorded statements by the Defendant and that her written statements consisted of the affidavits and handwriting sample that were the subject of the Defendant's suppression motion. Accordingly, the Court finds that the Government has already provided any recorded or written statements by the Defendant.

*(2) Defendant's Criminal Record*

The Defendant also asks that the Government be ordered to provide her prior criminal record. At the September 26 motion hearing, the Government stated that it had already provided the Defendant's prior criminal record. The Court finds no need to order further production of this item.

---

[3]Without addressing whether the Jencks Act, 18 U.S.C. § 3500, applies to the reports of government agents memorializing an oral statement of a defendant, the Court simply notes that both Investigators Graham and Houser testified at the September 26, 2011 hearing and, thus, any Jencks material as to those witnesses would already be due.

*(3) Office Supplies and Prescription Pads*

The Defendant moves the Court to order the Government to disclose any office supplies bearing her name or DEA number, including blank prescription pads or purchase orders for prescription pads. The Government initially responded [Doc. 86] that it had disclosed to the Defendant copies of all items seized from Maryville Pain Management and that it was not aware of any blank prescription pads in its possession. In it's response, the Government stated that it would review all of the evidence to confirm that the Defendant has received any items that would fall into this category. At the September 26 motion hearing, AUSA Hui informed the Court that DEA Investigator David Graham seized a twenty-five-pound cardboard box containing blank prescription pads from Defendant Tamral Guzman's office. AUSA Hui stated that Investigator Graham shredded the contents of the box because he did not believe that the box or its contents had any evidentiary value.

Investigator Graham gave the following testimony with regard to the box of prescription pads: On November 13, 2009, he seized a box, weighing approximately twenty-five pounds, and containing blank prescription pads from Tammy Guzman's office at Maryville Pain Management clinic. The prescription pads were blank with the exception of Defendant Wright's name and DEA number printed on them. Investigator Graham said that Defendant Guzman pointed out the box and said that she did not know what to do with it. Investigator Graham said he took the box of prescription pads and shredded them as a courtesy to Guzman, who did not seem able to get rid of them, and to make sure that they did not fall into the wrong hands. He testified that he did not log the box of prescription pads into evidence because he did not believe them to be relevant to the case or of any evidentiary value.

On cross-examination, Investigator Graham stated that he did not know how many prescription pads were in the box, which was approximately three feet long. He said that Defendant Guzman told him that these prescription pads were left over after Defendant Wright quit and that she did not know what to do with them. Defendant Guzman asked Investigator Graham if she should return them to Defendant Wright. Investigator Graham did not think that Defendant Wright could use them because they had the wrong address on them. Defendant Guzman said that she did not have the ability to shred the pads, so Investigator Graham said that he would take care of them. He stated that this occurred on the same day that he seized a large quantity of narcotics from Maryville Pain Management's safe because Defendant Guzman was not authorized to have medications there. He stated that the focus of his investigation at that time was forged prescriptions.

Investigator Graham testified that he did not ask who had ordered the prescription pads or when they were ordered. He noted based upon his experience in this type of business, that printers often sent orders of prescription pads at regular intervals. He agreed that it was possible that Defendant Guzman could have ordered the box of prescription pads after Defendant Wright left Maryville Pain Management, but he said he had no information to cause him to believe that was what had happened. He did not know if these prescriptions were identical to the ones issued by Defendant Wright when she worked at Maryville Pain Management. On redirect examination, Investigator Graham testified that the box of prescription pads was the only evidence that he seized and then destroyed from Maryville Pain Management.

The Court finds that the Government cannot produce the box of blank prescription pads in discovery because it was destroyed by Investigator Graham. At the motion hearing, the Defendant argued that the destruction of the box of prescription pads deprived her of exculpatory

evidence.  The Defendant contended that if she had the box of blank prescriptions she might be able to determine from where they had been ordered and to learn whether Defendant Guzman had ordered them after Defendant Wright resigned from Maryville Pain Management.

> When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.

Monzo v. Edwards, 281 F.3d 568, 580 (6th Cir. 2002) (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988)).  In the instant case, the Court finds that the box of blank prescription pads was not exculpatory by virtue of its existence but, instead, could have been exculpatory if the Defendant could show that her codefendant ordered these prescription pads after the Defendant resigned from Maryville Pain Management.  Accordingly, the Court looks to the three-part test from Monzo.

With regard to the first prong, the Defendant has failed to show through the testimony of Investigator Graham that the Government acted in bad faith in failing to preserve the box of blank prescription pads.  Investigator Graham testified that he destroyed the box and its contents because he did not believe it had any evidentiary value and because he did not want the blank pads to fall into the wrong hands.  While the Court does not condone the destruction of this evidence, the Court notes that as of November 5, 2009, Defendant Wright had admitted to Investigator Graham that she had pre-signed 250 blank prescriptions for Defendant Guzman to use in her absence.  Based upon this information, Investigator Graham could have reasonably thought that he was interested in

prescriptions bearing the Defendant's signature, yet otherwise blank, rather than totally blank prescription pads. Accordingly, the Court finds that Investigator Graham did not destroy the box of prescription pads in bad faith.

Additionally, the Court finds that the Defendant could potentially obtain the information she seeks–records of who ordered the prescriptions and when–from other sources. The Defendant could learn the identity of the printer used by Maryville Pain Management either from her prior experience as an employee there or by looking at any prescription pads she retained from her employment at Maryville Pain Management. By contacting that printer, the Defendant could presumably learn the date of the last order of prescription pads bearing her name and DEA number. In this regard, AUSA Hui stated at the motion hearing that the Government had requested any invoices from the printer used by Maryville Pain Management and would disclose those to the Defendant once received. While the Court recognizes that someone could have ordered prescriptions bearing Defendant Wright's name from a different printer, the Court observes that the Defendant may be able to gain this information even though the box of blank prescription pads has been destroyed.

*(4) Handwriting Exemplars*

The Defendant asks the Court to order the Government to produce any handwriting exemplars of Defendant Wright and/or documents purporting to contain practice attempts at her signature. In its response, the Government states that it will review all of the evidence to make sure that the Defendant has received all documents in the Government's possession that appear to bear the Defendant's handwriting or signature. At the September 26 motion hearing, the Government

entered into evidence [Exh. 1] a document bearing multiple signatures by Defendant Wright.[4] The Court finds that the Government has produced the requested handwriting exemplars.

*(5) Summaries*

The Defendant next asks the Court to order the Government to disclose "[a]ny statistical or summary document purporting to quantify the type and number of drugs prescribed by defendant, or purporting to summarize or analyze defendant Wright's patient care or prescribing history. In[] particular[,] all Reports of Examination of her professional practice indicating the presence or absence of a 'legitimate medical purpose' in the 'ordinary course of professional practice.'" [Doc. 76, p.2] The Government objects to the disclosure of this type of information. At the September 26 motion hearing, the Government stated that it would produce any summaries produced by experts at the time directed for production of expert reports.

The Court's Order on Discovery and Scheduling directs [Doc.45, ¶ L] that the Government shall disclose its expert information, required by Rule 16(a)(1)(G), of the Federal Rules of Criminal Procedure, at least three weeks before trial. Rule 16(a)(1)(G) requires the Government to provide a "written summary" of the expert's testimony, describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Accordingly, the Court finds that it has already ordered and the Government has agreed to provide the information requested to

---

[4]Investigator Graham testified that during the course of the November 5th meeting, the Defendant examined prescriptions and stated that most of them did bear her signature. The Defendant was not sure whether a couple of the signatures were hers or not. Investigator Graham told the Defendant that an individual's signature can have minor variations depending upon whether the person was rushing, standing or sitting, fatigued, etc. To illustrate this, he had the Defendant sign her name on a piece of paper numerous times, and he highlighted the variations. This paper was entered into evidence as Exhibit 1.

the extent that it is a part of an expert witness's opinion.

To the extent that the Defendant is requesting statistical or summary documents prepared by the Government attorneys, the Court finds that such would be the attorneys' work product and would not be discoverable by the Defendant. Fed. R. Crim. P. 16(a)(2) (providing that the Government is not required to disclose "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case").

*(6) Other Documents or Objects*

Finally, the Defendant asks the Court to order the Government to disclose any other documents or objects that the Government intends to use in its case in chief at trial, that are material to the preparation of the Defendant's defense or that belong to the Defendant. Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the disclosure of these categories of items that are in the government's custody or control. The Court has already ordered the disclosure of such items in the instant case in its Order on Discovery and Scheduling [Doc. 45, ¶B3]

In summary, the Court finds that it has already ordered the Government to produce most of the items requested by the Defendant. If it has not already done so, the Government is ordered to disclose to the Defendant the November 5, 2009 report of Investigator Graham [Doc. 127] and paragraph 11 of Investigator Houser's Report [Doc. 128]. The Court finds that the Government cannot produce the box of blank prescription pads seized from Maryville Pain Management on November 13, 2009, because Investigator Graham destroyed them. The Court also finds that the Government did not act in bad faith with regard to the destruction of these prescription pads.

Finally, the Court finds that the Defendant is not entitled to disclosure of the Government's work product in the form of summaries or statistical analyses of the medical records at Maryville Pain Management. Accordingly, Defendant Wright's Motion for Rule 16, Discovery [**Doc. 76**] is **GRANTED in part**, in that the Government is ordered to disclose certain reports of Investigators Graham and Houser [Docs. 127 & 128], and **DENIED** in all other respects.

### B. Exculpatory Evidence

Defendant Wright asks the Court to order the Government to disclose the following items, which the Defendant contends are "favorable":

> (1) Impeachment information for Government witnesses, including information about promises of immunity, preferential treatment, payments, inconsistent statements, or, in the case of Government agents or experts, allegations of misconduct;
>
> (2) The names and addresses of any witnesses that might give testimony favorable to the Defendant;
>
> (3) Medical records from Maryville Pain Management clinic showing that the Defendant provided appropriate medical care and issued legitimate prescriptions;
>
> (4) Documentation of surveillance of the Defendant that reveals that she was not involved in criminal activity;
>
> (5) Documents showing handwriting that appears to mimic that of Defendant Wright;
>
> (6) All preprinted documents or prescription pads bearing the Defendant's name or DEA number; and
>
> (7) Any other documents that contradict or are inconsistent with any testimony that the Government intends to use in this case.

The Government responds [Doc. 86] that it has and will continue to comply with its obligations

under Rule 16 of the Federal Rules of Criminal Procedure; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); and other related case law.

The Supreme Court has held that the government violates due process when it withholds from the defendant favorable evidence that is "material either to guilt or punishment." <u>Brady</u>, 373 U.S. at 87. As with discovery, the Court's Order on Discovery and Scheduling addresses the Government's obligation in this regard:

> The government shall reveal to the defendant and permit inspection and copying of all information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>United States v. Agurs</u>, 427 U.S. 97 (1976) (exculpatory evidence), and <u>United States v. Bagley</u>, 473 U.S. 667 (1985) (impeachment evidence).

[Doc. 45, ¶E] Thus, the Court finds that it has already ordered the Government to turn over materials within the scope of <u>Brady</u>. The Court examines the categories of evidence listed by the Defendant to aid in clarifying the Government's <u>Brady</u> obligations in this case.

*(1) Impeachment Evidence*

Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the Defendant asks the Court to order the Government to disclose all evidence that would permit her to impeach the Government's witnesses, including information about promises of immunity, preferential treatment, payments, or inconsistent statements. She also requests disclosure of any information demonstrating that a Government agent or expert connected with the investigation of this case was involved in misconduct. The Government responds that it will disclose all <u>Giglio</u> material before trial and it will give all <u>Giglio</u> material that is also Jencks material one week before trial. At the September 26

hearing, AUSA Hui stated that there were no agreements, immunity, or preferential treatment, including letters written to potential employers, for witnesses in this case.[5]  She stated that any remuneration paid to Government witnesses would be disclosed along with Jencks material.  The Court finds that the Government has agreed to provide the requested information to the extent that it exists.

*(2) Favorable Witnesses*

The Defendant moves the Court to require the Government to disclose the names and addresses of any witnesses that might give testimony favorable to the Defendant.  The Defendant includes within this category the names, addresses, and statements of any witnesses who can testify that the Defendant had no knowledge that her DEA number was being used to order bulk controlled substances.  The Government responds that this request exceeds the scope of Brady, because Brady requires the disclosure of evidence that is not only favorable, but also *material*, that is evidence which has the reasonable probability of affecting the outcome of the proceeding.  See United States v. Bagley, 473 U.S. 667, 682 (1985).  The Government contends that it will provide a summary of any favorable and material information to the Defendant before trial but that it is not aware of any material, favorable witnesses.

Brady requires the Government to disclose only that evidence that is possessed by the government, but not the defendant; is exculpatory or impeaches the credibility of a government witness; and is reasonably likely to affect the outcome of the trial.  United States v. Mullins, 22 F.3d

---

[5]AUSA Hui stated that she had already disclosed to defense counsel that the Government had purchased a can of soda for Melvin Viney in the week preceding the motion hearing.

1365, 1371 (6th Cir. 1994). The failure to disclose exculpatory evidence will only require a new trial if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Bagley, 473 U.S. at 682. Moreover, "the government typically is the sole judge of what evidence in its possession is subject to disclosure." United States v. Presser, 844 F.2d 1275, 1282 (6th Cir. 1988). Here, the Government has agreed to provide any favorable and material evidence to the Defendant before trial, ostensibly including identifying any favorable and material witnesses, if any are discovered. In this regard, the Government is cautioned that Brady material must be disclosed to the Defendant in time for her to use the material at trial effectively. See United States v. Farley, 2 F.3d 645, 654 (6th Cir. 1993).


*(3) Medical Records*

The Defendant requests that the Court order the Government to provide all medical records from Maryville Pain Management clinic that show that she provided appropriate medical care and issued legitimate prescriptions. In this regard, the Defendant requests all medical records that show that she performed an adequate patient examination, that MRI's or other documentation of injuries were sufficient to substantiate the patient's complaints, that care was denied or deferred due to the patient's suspected misuse of controlled substances, that the dosage of controlled substances was changed or regulated, that Maryville Pain Management accepted checks or credit cards as payment for services, that a patient was discharged by the Defendant or the clinic, or that a patient was from Blount County or from Tennessee.

The Government responds that it has provided the Defendant with copies of all of the

evidence it seized from Maryville Pain Management, including fifty-nine patient files and images of the computers used at the clinic. The Government contends that provision of any additional medical records is impossible because such records are not in the Government's possession. The Government suggests that the Defendant may be able to obtain the information she seeks from Codefendant Tamral Guzman, who retained possession of all of the remainder of the medical records at Maryville Pain Management. At the September 26 hearing, Attorney Meares stated that counsel for Defendant Guzman will not disclose the medical records to him unless ordered to do so by the Court. Attorney Menefee, counsel for Defendant Guzman, stated that his client's disclosure of the medical records in the absence of a Court order could expose her to a potential violation of the Health Insurance Portability and Accountability Act (HIPAA).

In a related motion,[6] the Defendant argues that the Government spoiled exculpatory evidence by failing to seize all of the medical records at Maryville Pain Management in November 2009 or, at the latest, when it executed a search warrant at the clinic in December 2010. The Defendant contends that the Government knew that the entirety of the files would be necessary for her to demonstrate her usual course of medical practice. The Government argues that with the exception of the fifty-nine files seized in the execution of the search warrant and those files given to Investigator Graham by Melvin Viney,[7] the Government never possessed the medical records at

---

[6]The Defendant makes these arguments in her Motion to Dismiss for Preindictment Delay and Failure to Preserve Evidence in Violation of Defendant's Due Process Rights [Doc. 71]. The Court has addressed this motion in a separate Report and Recommendation. The Court repeats part of that analysis here as it relates to the Government's obligation to disclose exculpatory evidence.

[7]At the September 26 hearing, the parties realized that the Government had only disclosed a portion of the contents of the files that Melvin Viney gave to Investigator Graham. At that time, the Government stated that it would review the evidence and make sure that the

Maryville Pain Managment and, thus, it has no duty to preserve and produce them for the Defendant. See Owens v. Guida, 549 F.3d 399, 415 (6th Cir. 2008) (observing that "Brady . . . does not apply to information that is not wholly within the control of the Government"). The Government argues it had no basis to seek a search warrant for the remaining medical records from the clinic.

On December 2, 2011, the Government moved [Doc. 113] to dismiss the protective order on 118 Parliament Drive, Maryville, Tennessee, the address where Maryville Pain Management was located, because it had determined that Defendant Guzman did not have a sufficient interest in the property to warrant its forfeiture. Defendant Wright filed an objection [Doc. 114] to the Government's motion to release the protective order, contending that the property contained evidence favorable to her in the form of medical records. Defendant Wright also moved the Court to order that the patient records on the premises be preserved and that Defendant Wright be granted access thereto. The Government responded [Doc. 116] that Defendant Wright had no standing to object to the release of the protective order. The Government took no position with regard to the Defendant's request that the Court issue an order preserving medical records contained therein.

On December 16, 2011, District Judge Varan ordered [Doc. 118] the release of the protective order for 118 Parliament Drive. The Court found that Defendant Wright had no standing to object to the release and that the protective order did not grant the Government authority to take possession of the contents of the property or did it bar the Defendants from access to the property. The Court did not rule upon the Defendant's request for access to the medical records but, instead, referred that issue to the undersigned to determine along with the Defendant's Motion for Production

---

complete contents of these files were disclosed to the Defendant as soon as possible.

of Favorable Evidence [Doc. 75].

On December 21, 2011, the Hummel Family Living Trust, the owner of the Parliament Drive property, gave notice [Doc. 119] of its intent to destroy all remaining medical records left on the property. The notice states that Defendant Guzman collected the majority of the medical records at the property during November 13 through 19, 2011, but that approximately 1,200 medical records still remain at the property. The notice also states that counsel for Defendant Wright reviewed the remaining patient files at the property on December 21, 2011, but did not take possession of them and did not bring the Defendant to view them. The notice states that in light of the fact that neither Defendant will take possession of the files, the Trust intends to have them shredded on December 30, 2011.

On December 27, 2011, counsel for Defendant Wright filed an affidavit [Doc. 120] stating that the medical records depicted in five attached photographs were removed from the Parliament Drive property before December 2, 2011, and that the medical records depicted in the final attached photograph were present at the Parliament Drive property when counsel visited in December 2011. On that same day, the Court conducted a telephone conference with counsel for Defendants Wright and Guzman and with Attorney David Eldridge, counsel for the Hummel Family Living Trust. Mr. Menefee stated that Defendant Guzman planned to pick up the remaining patient files from the property the following day. He stated that Defendant Guzman would place the files in her garage with the other files from Maryville Pain Management. He stated that the garage was locked and dry. Attorney Meares stated that he had observed the files at the Parliament Drive property but had not reviewed them.

During the telephone conference, Attorney Meares reiterated that Defendant Wright

sought an order from the Court allowing her and her attorney access to the files. Mr. Menefee stated that Defendant Guzman had no objection to the requested order but was not able to grant access to Defendant Wright in the absence of a court order due to HIPAA concerns. The Court concluded that Defendant Wright had provided no authority for the Court to order that she have access to the files and that the Court knew of none. The Court invited counsel for Defendant Wright to file a motion for access to the files that was supported by authority. Until then, the Court found that the files would not be destroyed because Defendant Guzman had agreed to pick up and store them. On the following day, Mr. Menefee emailed the Court and the parties to confirm that Defendant Guzman had picked up the remaining files from the Parliament Drive property. Defendant Wright filed no other motion or brief relating to the medical records from Maryville Pain Management.

### *(i) Government's Duty to Preserve and Disclose Medical Records*

The Defendant contends that the Government should disclose all of the patient files from Maryville Pain Management because they contain potentially exculpatory evidence. The Government responds that other than the files already disclosed to the Defendant in discovery, it does not possess the remainder of the patient files from Maryville Pain Management and that it had no duty, nor any legal basis, to seize and preserve them.

First, the Court agrees with the Government that it has no duty to disclose exculpatory information that it does not possess. "Brady obviously does not apply to information that is not wholly within the control of the prosecution." Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998). In her Motion to Dismiss [the Indictment] for Preindictment Delay and Failure to Preserve Evidence in Violation of Defendant's Due Process Rights [Doc. 71], the Defendant contends that

the Government should have seized all of the patient files at Maryville Pain Management either when Investigator Graham searched the premises pursuant to Defendant Guzman's consent on November 13, 2009, or when the Government executed a search warrant at Maryville Pain Management in December 2010. In support of her argument, the Defendant references the Sixth Circuit's three-part test for determining when the government's failure to preserve materially exculpatory evidence constitutes a due process violation:

> When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.

Monzo v. Edwards, 281 F.3d 568, 580 (6th Cir. 2002) (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988)). The Defendant argues that the Government acted in bad faith in failing to preserve the medical records at Maryville Pain Management and in preserving only a select few that supported its case, despite knowing that the Defendant was a target of its investigation. The Defendant also contends that access to all the medical records from the clinic is necessary for her to prove a legitimate medical purpose in dispensing prescriptions in the usual course of her professional practice. She maintains that she has no comparable evidence to replace the missing patient records. The Court analyzed this issue in its Report and Recommendation on the Defendant's motions to dismiss the Indictment. The Court concluded that the Government did not act in bad faith in failing to seize all of the patient files from Maryville Pain Management. When Investigator Graham searched the clinic in November 2009, he was looking for evidence of drugs obtained and stored at the clinic without authorization. Moreover, the search warrant executed in

December 2010 only permitted the Government to seize patient files for named patients. The Court finds that the Government did not have the authority to seize all of the clinic's patient files. The Government has disclosed the patient files given to Investigator Graham by Melvin Viney and the 59 medical files seized pursuant to the search warrant. Accordingly, the Court finds that the Government has already disclosed all of the medical records in its possession.

*(ii) Authority for Defendant Wright to View Patient Files in Codefendant's Possession*

The Defendant also asks the Court to order Codefendant Tamral Guzman to permit her and her counsel to review the patient files in Defendant Guzman's possession. The Defendant has provided no legal authority in support of this request. Rule 16 and <u>Brady</u> only provide for the Government's obligation to disclose evidence. They do not relate to potential evidence possessed by third parties.

The Defendant could perhaps seek a subpoena for the production of documents pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure to obtain access to the requested patient files. Such a request would permit Defendant Guzman and perhaps the individual patients, <u>see</u> Fed. R. Crim. P. 17(c)(3), to move to quash the subpoena, <u>see</u> Fed. R. Crim. P. 17(c)(2), and would allow the concerned parties to explain to the Court the potential HIPAA violations, if any. Nevertheless, the Court observes that the Defendant has failed thus far to meet the requirements for a Rule 17(c) subpoena duces tecum.

> [P]roduction pursuant to Rule 17(c) is appropriate where it is shown that: (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable, with due diligence, in advance of trial; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and (4) the application was made in good faith and is not a fishing expedition.

United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990) (citing United States v. Nixon, 418 U.S. 683, 699 (1974)). Moreover, Rule 17(c) is not intended to be used as a discovery device. Nixon, 418 U.S. at 702; see also United States v. Justice, 14 F. App'x 426, 432 (6th Cir. 2001). Accordingly, the Court finds that to date, the Defendant has failed to make any showing, much less the appropriate showing to permit the Court to order Defendant Guzman to produce the patient files from Maryville Pain Managment. To the extent that the Defendant's Objection to Release of Protective Order and Motion to Preserve Patient Records and Provide Defendant Wright Access Thereto [**Doc. 114**] asks the Court to order Defendant Guzman to allow her access to the patient records from Maryville Pain Management, it is **DENIED**.

*(4) Surveillance*

The Defendant asks the Court to order the Government to disclose documentation, whether written or recorded, of surveillance of the Defendant that reveals that she was not involved in criminal activity. Neither the Government's response, nor its oral argument, specifically address surveillance. The Court observes that its Order on Discovery and Scheduling [Doc. 45, ¶J] already requires the Government to disclose, upon request, whether the Defendant was subject to wire, oral, or electronic surveillance. Accordingly, the Court finds that it has already ordered this disclosure, to the extent that it applies in this case.

*(5) Forged Handwriting*

The Defendant requests disclosure of any documents showing handwriting that appears to mimic her handwriting. The Government responds that it will review the evidence in its

possession to ensure that it has produced all documents appearing to bear the Defendant's handwriting or signature. As noted with regard to the Defendant's discovery motion, the Government produced a document bearing the Defendant's signature [Exh. 1] as an exhibit at the motion hearing. Accordingly, the Court finds that the Government has provided or has agreed to provide this evidence.

*(6) Prescription Pads*

The Defendant asks the Court to order the Government to disclose all preprinted documents or prescription pads bearing the Defendant's name or DEA number. The Government responds that it does not possess any of the requested items but that it will review its evidence to make sure that the Defendant has received any such items. As discussed above, at the September 26 hearing, the Government revealed that Investigator David Graham had destroyed a box of blank prescription pads preprinted with the Defendant's name and DEA number. The Court has already found that even though the prescription pads were potentially exculpatory evidence, Investigator Graham did not destroy them in bad faith. Additionally, the Court found that the Defendant might be able to gain the information she seeks (records of who ordered the prescription pads and when) from other sources. At the September 26 hearing, AUSA Hui stated that the Government had requested any invoices from the printer used by Maryville Pain Management and would disclose those to the Defendant once received. Accordingly, the Court finds that the Government has agreed to disclose all prescription pads bearing the Defendant's name and DEA number and any information regarding the ordering of those pads in its possession.

*(7) Other Inconsistent Documents*

Finally, the Defendant seeks disclosure of any other documents in the Government's possession that contradict or are inconsistent with any testimony that the Government intends to use in this case. The Court finds that it has ordered and the Government has agreed to disclose Brady material. No more can be said with regard to this broad request.

In summary, the Court finds that the Defendant's Motion for Production of Favorable Evidence [**Doc. 75**] is **GRANTED in part** in that the Court has ordered and the Government has provided or agreed to provide all material, exculpatory evidence. The motion is **DENIED in part** with respect to medical records from Maryville Pain Management that are not in the Government's possession.

## II. CONCLUSION

For the reasons given herein, it is **ORDERED** that

(1) Defendant's Motion for Production of Favorable Evidence [**Doc. 75**] is **GRANTED in part** as described above and **DENIED in part** with respect to medical records from Maryville Pain Management that are not in the Government's possession;

(2) Defendant Wright's Motion for Rule 16, Discovery [**Doc. 76**] is **GRANTED in part**, in that the Government is ordered to disclose certain reports of Investigators Graham and Houser [Docs. 127 & 128], and **DENIED** in all other respects; and

(3) Defendant's Objection to Release of Protective Order and Motion to Preserve Patient Records and Provide Defendant Wright Access Thereto [**Doc. 114**] is **DENIED.**

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge